UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel. RUBEN HERNANDEZ, | ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 05-C-4150 |
| GUY PIERCE, | ) ) | Judge Ruben Castillo |
| Respondent. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Ruben Hernandez is currently serving a sixty-year prison sentence for first degree murder. (R. 1, Pet. at 1.) Hernandez has petitioned this Court for a writ of habeas corpus pursuant to Section 2254 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. (*Id.*) In support of his petition, Hernandez argues that he is currently in custody in violation of the United States Constitution because his rights to counsel and a fair trial were violated. Specifically, Hernandez argues that: (1) he was improperly denied access to his attorney during questioning at a police station; (2) the trial court improperly allowed the testimony of a gang crimes expert to establish motive; (3) the trial court improperly excluded the testimony of Hernandez's attorney at trial; (4) the trial court erred in rejecting his jury instructions regarding prior inconsistent statements; (5) the trial judge imposed an excessive sentence; and (6) the state failed to prove its case beyond a reasonable doubt. (R. 1, Pet. at 5-6.) After carefully considering each of Hernandez's claims, for the reasons set forth below we find that a writ of habeas corpus is not warranted in this case.

**FACTUAL BACKGROUND**

In reviewing any petition for habeas relief, this Court must presume that the state court's factual determinations are correct unless the petitioner rebuts those facts by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). We therefore adopt the recitation of the facts set forth in the Illinois Appellate Court's order denying Hernandez's appeal of his conviction. The facts regarding the procedural history of this case come from Hernandez's habeas petition and the state court record that Respondent provided pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.

## I. The Shooting and Investigation

On January 29, 1999, Roberto Cruz was shot multiple times in the arm and back while attempting to enter his car at the corner of Wellington and Elston Avenues in Chicago. (R. 13, Ex. D, Ill. App. Order at 2.) Mr. Cruz died as a result of his injuries. (*Id.*) Detective Reynaldo Guevara was assigned to investigate the Cruz murder. (*Id.*) Two police officers took Hernandez into custody on March 1, 1999 in connection with an unrelated armed robbery. (*Id.*) Hernandez was taken into custody at the 14th District police station and was transferred to the Area 5 police station later that day. (*Id.*) On the morning of March 2, 1999, in the presence of Guevara, Assistant State's Attorney Brendan McGuire, and a court reporter, Hernandez gave a statement implicating himself in the shooting of Mr. Cruz. (*Id.* at 4-5.) Hernandez did not sign the statement. (*Id.* at 5.)

## II. Motion to Suppress Hearing

On November 18, 1999, the trial court held a hearing on Hernandez's motion to suppress

2

his incriminating statement. (*Id.* at 6.) The defense called Michael Solock in support of its motion. (*Id.*) Solock testified that Hernandez telephoned him on January 31, 1999, and told Solock that he believed the police were looking for him in connection with a murder investigation. (*Id.* at 6-7.) Solock testified that after discussing the matter with Hernandez at Hernandez's home, Solock then called Guevara to introduce himself as Hernandez's attorney. (*Id.* at 7.) Solock offered to bring Hernandez to the station later that day, but when Guevara told him the police were not looking for Hernandez, Solock testified that he gave Guevara his name and telephone number and asked to be called if the police were looking for Hernandez. (*Id.*) Guevara agreed. (*Id.*)

Solock further testified that on March 1, 1999, he was told that Hernandez had been taken to the 14th District police station. (*Id.*) Solock arrived at the 14th District at approximately 11:20 a.m. and identified himself to Officer Kischner as Hernandez's attorney. (*Id.*) Solock met with Hernandez and advised him not to make any statements or sign anything and to inform the police that Solock was his attorney. (*Id.*) Solock testified that in Hernandez's presence Solock told Kischner that he represented Hernandez and that he did not want Hernandez to make any statements. (*Id.*) Solock testified that he did not learn that the police moved Hernandez to Area 5 until March 2, 1999. (*Id.*) After speaking to Guevara on the phone—who told him that no charges had been filed—Solock went to Area 5, arriving around 10:50 a.m. on March 2nd. Solock testified that he was not permitted to speak with Hernandez until 11:20 a.m. (*Id.* at 7-8.)

At the hearing, two officers testified that they advised Hernandez of his Miranda rights on March 1, 1999 and that Hernandez never stated that he wished to speak to an attorney. (*Id.* at 8.) Kischner denied ever being in the same room with both Hernandez and Solock and denied that

3

Solock told him that Hernandez did not wish to make a statement. (*Id.*) Guevara testified that Hernandez told him on March 1, 1999 that he had been advised of his rights, but Hernandez did not say that he wished to remain silent or speak with an attorney. (*Id.* at 8-9.) Guevara testified that Hernandez said he had been advised of his Miranda rights and that he understood them before giving his statement. (*Id.*) Guevara stated that Hernandez never asked to speak with an attorney or said he wished to remain silent during their conversations. Guevara also testified that after Hernandez gave the statement, around 11:15 a.m., Guevara was called to the front desk where he met someone who identified himself as Hernandez's attorney. (*Id.*)

The trial court found that whether Solock was permitted to speak with Hernandez on a timely basis was a credibility issue that turned on whether Solock arrived at the station at 10:50 a.m. or at 11:20 a.m. (*Id.* at 16.) The trial court found the state's position that Solock arrived at 11:20 was more credible and accordingly denied the motion to suppress. (*Id.*)

## III. Evidence at Trial

Hernandez was tried along with two co-defendants in the Circuit Court of Cook County, Illinois. Guevara testified that on March 1, 1999, Guevara spoke with Hernandez at Area 5 for about twenty minutes. (*Id.* at 2-3.) Later that day he spoke with co-defendant Richard Kwil and accompanied Kwil to the apartment where Kwil was living, located at 3734 North Pine Grove. (*Id.* at 3.) Guevara located a nine-millimeter weapon in a purse hanging behind a bathroom door in the apartment. (*Id.*) After recovering the weapon, Guevara returned to Area 5 and had an approximate thirty-minute conversation with Hernandez in which Guevara told Hernandez that Kwil and Gecht were at Area 5 and that the weapon had been recovered. (*Id.*)

Sometime between 2 and 3 a.m. on March 2, 1999, Assistant State's Attorney Brendan

4

McGuire arrived at Area 5. (*Id.*) McGuire testified that at 3:55 a.m., he advised Hernandez of his *Miranda* rights and Hernandez agreed to speak with him. (*Id.*) McGuire and Guevara then spoke with Hernandez for about fifteen to twenty minutes. (*Id.* at 3-4.) McGuire testified that he asked Hernandez—outside the presence of any detectives—whether the police had treated him well and whether he needed anything. Hernandez told McGuire that he had not had any problems with the police. (*Id.* at 4.) At around 10:43 a.m., in the presence of a court reporter, McGuire, and Guevara, Hernandez again was advised of his *Miranda* rights. Hernandez then gave a statement identifying himself as a member of the Insane Unknown street gang and implicating himself in the murder of Mr. Cruz. (*Id.* at 4-5.) Specifically, he testified that at the command of a fellow gang member, Hernandez retrieved a gun, picked up Kwil and Gecht, and coordinated the attack on Mr. Cruz. (*Id.*) Hernandez drove Kwil and Gecht to Mr. Cruz's car. Kwil served as a lookout and Gecht as the shooter. After the shooting, Hernandez picked up Kwil and Gecht and drove the get-away car. Gecht gave a statement corroborating these facts. (*Id.* at 5-6.)

The trial court permitted Officer Joe Rodriguez—who was employed by the Chicago police and assigned to the FBI gang task force—to testify for the prosecution as an expert on Chicago street gangs. (*Id.* at 6.) Rodriguez testified that in January 1999 the Insane Unknowns were involved in a turf war with a gang known as the Spanish Lords. He testified that Roberto Cruz was the leader of the Spanish Lords at that time. He also testified that Hernandez was known as "Little Ruben" and that he was the chief enforcer in the Insane Unknowns. He further testified that the chief enforcer's role included obtaining guns, doing security, performing disciplinary measures on members, and recruiting members to participate in violent gang activity.

5

(*Id.*)

On April 24, 2000, the jury found Hernandez guilty of the murder of Roberto Cruz. (R. 1, Pet. at 1; R. 13, Ex. D, Ill. App. Order at 2.) He was sentenced to a prison term of sixty years. (R. 1, Pet. at 1.)

## IV. Direct Appeal

Hernandez appealed his conviction in the Illinois Appellate Court. (R. 13, Ex. D, Ill. App. Order.) Hernandez raised four issues on direct appeal: (1) whether the trial court erred in allowing a gang crimes expert to testify to establish motive; (2) whether Hernandez was denied his state constitutional rights to counsel and due process where he alleged that he was not allowed to see his attorney during police questioning; (3) whether the trial court erred in excluding the testimony of his attorney; and (4) whether the trial court erred in denying his request for a jury instruction regarding prior inconsistent statements. (*Id.* at 1-2; *id.*, Ex. A, Def.'s Br. at 2.) The appellate court rejected these arguments and affirmed Hernandez's conviction. (*Id.*, Ex. D, Ill. App. Order at 24.) Hernandez filed a petition for leave to appeal in the Supreme Court of Illinois where he argued that he was denied his right to counsel and due process under the Illinois Constitution and that the trial court erred in permitting the gang crimes expert to testify. (*Id.*, Ex. E, P.L.A. at 2.) The Illinois Supreme Court denied Hernandez's petition. (*Id.*, Ex. F, Ill. Sup. Ct. Order.)

## V. Post-Conviction Proceedings

On August 28, 2003, Hernandez filed a *pro se* petition for post-conviction relief arguing that his sentence was disproportionate and excessive and that his trial and appellate counsel were ineffective for failing to preserve this issue and raise it on appeal. (*See id.*, Ex. G, *Finley* Br. at

6

2.) The circuit court denied Hernandez's post-conviction petition on October 29, 2003. (*Id.* at 3.) On September 10, 2004, Hernandez's appellate counsel filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), stating that any further appeal in Hernandez's case would be frivolous. (*Id.*, *Finley* Mot. at 1-2.) Hernandez filed a response in the Illinois Appellate Court in which he raised the same issues he raised in his post-conviction petition. (*Id.*, Ex. H, Def.'s Resp. at 2.) The appellate court granted Hernandez's counsel's motion to withdraw and affirmed the circuit court's judgment dismissing the post-conviction petition. (*Id.*, Ex. I, Ill. App. Order at 2.)

On February 28, 2005, Hernandez filed a petition for leave to appeal the dismissal of his post-conviction petition in the Illinois Supreme Court. (*Id.*, Ex. J., P.L.A. at 1.) Hernandez raised the same three issues that he asserted in the post-conviction petition. (*Id.* at 2.) The Illinois Supreme Court denied Hernandez's petition for leave to appeal on May 25, 2005. (*Id.*, Ex. K, Ill. Sup. Ct. Order.) Hernandez filed the instant habeas petition on July 19, 2005. (R. 1, Pet. at 1.)

## LEGAL STANDARDS

A district court can issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has fairly presented his federal claims to the state courts. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004); *Spreitzer v. Schomig*, 219 F.3d 639, 644-45 (7th Cir. 2000). "Federal habeas relief is available only when a petitioner has given the state courts a full and fair opportunity to review a claim,

when there is cause and prejudice for the failure to raise the claim in state court or when the default would lead to a 'fundamental miscarriage of justice.'" *Steward v. Gilmore*, 80 F.3d 1205, 1211 (7th Cir. 1996) (citations omitted).

Even where a petitioner has overcome all procedural hurdles, a federal court can only grant an application for habeas review if it meets the requirements of 28 U.S.C. § 2254(d), which provides:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See also Woodford v. Visciotti*, 537 U.S. 19, 21 (2002) (per curiam). Under this deferential standard, we must "attend closely" to the considered decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000).

## ANALYSIS

### I. Procedural Default: Claims Three, Four, and Six

Respondent asserts that Hernandez has procedurally defaulted three of the six grounds for relief set forth in his habeas petition. (R. 12, Answer at 8.) A federal habeas petitioner is only entitled to relief if he has exhausted all of the available state remedies and raised all of the claims cited in his habeas petition during the course of the state court proceedings. *Rodriguez v. Peters*,

63 F.3d 546, 555 (7th Cir. 1995). In other words, the petitioner must have "given the state courts a full and fair opportunity to review the claim." *Steward*, 80 F.3d at 1211. This means that the petitioner must set forth both the factual basis for his claims and the legal theory supporting those claims. *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005), *cert. denied*, 126 S.Ct. 174 (2005); *Momient-El v. DeTella*, 118 F.3d 535, 539 (7th Cir. 1997). This rule "stems from the understanding that state courts are equally obliged to follow federal law and from the desire for comity between state and federal court systems." *Spreitzer*, 219 F.3d at 645.

To satisfy the "full and fair opportunity" requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Illinois, "one complete round" of appellate review includes appellate court review as well as a petition for discretionary review in the Illinois Supreme Court. *Id.* The Seventh Circuit has held that the *Boerckel* procedural default rule "applies with equal force in a case . . . on collateral review." *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999).

We agree that Hernandez failed to fully and fairly present three of his claims in one full round of Illinois's appellate review process. Hernandez did not raise his claim that the state failed to prove its case beyond a reasonable doubt at any stage of the appellate review process. On direct appeal, Hernandez raised his arguments regarding his counsel's testimony and the prior inconsistent statement jury instruction but he did not raise these issues in his petition for leave to appeal in the Illinois Supreme Court. (*See* R. 13, Ex. E, P.L.A. at 2.) Though Hernandez asserts that "it is enough that all the facts relating to the claim were presented," (R. 14, Reply at 2), the facts relating to these claims did not appear in his petition for leave to appeal. As a result,

9

Hernandez has procedurally defaulted on these three grounds for relief. *Boerckel*, 526 U.S. at 845.

A federal habeas petitioner may proceed on a claim in the face of a procedural default where he "can demonstrate both cause for and prejudice stemming from that default . . . *or* he can establish that the denial of relief will result in a miscarriage of justice[.]" *Lewis*, 390 F.3d at 1026 (citations omitted) (emphasis in original). Cause exists where the petitioner can show that some kind of external factor prevented him from presenting his federal claim to the state courts. *Id.* Prejudice sufficient to overcome a procedural default exists where "the violation of the petitioner's federal rights 'worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original).

Here, Hernandez has not provided any explanation for his failure to raise the three procedurally defaulted claims. In the conclusion of his petition, he states that he "can show 'cause' and 'prejudice' because his appellate counsel failed to raise the 'reasonable doubt' reversible error on direct appeal." (R. 1, Pet. at V-D.) As long as Hernandez's appellate counsel was constitutionally effective, however, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486 (1986). Hernandez has not claimed in his petition that his appellate counsel was constitutionally ineffective.[1] Hernandez

---

[1] Hernandez states in his reply brief, however, "the reasonable doubt claim is predicated upon ineffective assistance of appellate counsel[.]" (R. 14, Reply at 6.) There is no mention of appellate counsel anywhere in Hernandez's reasonable doubt claim. (*See* R. 1, Pet. at V-A-V-D.) Hernandez's reasonable doubt claim is predicated entirely on his claim that the evidence submitted at trial was insufficient to support his conviction. (*Id.*) As a result, there is no

did not provide an explanation for his failure to fully pursue the claims. Therefore, we cannot find that there was cause for his procedural default. *Lewis*, 390 F.3d at 1026. Because Hernandez has not established cause for his default, there is no need to address whether prejudice exists. *Morrison v. Duckworth*, 898 F.2d 1298, 1301 (7th Cir. 1990).

Hernandez asserts in his petition that he is actually innocent of the murder of which he was convicted and that denial of habeas relief would be a fundamental miscarriage of justice. (R. 1, Pet. at 5.) A petitioner may only overcome procedural default based on a fundamental miscarriage of justice "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Carrier*, 477 U.S. at 496; *see also Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). A claim of actual innocence is only credible where a petitioner:

> support[s] his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

*Id.* at 324. The petitioner must show that in light of this new evidence, it is more likely than not that no reasonable juror would have convicted him. *Id.* at 327.

Here, Hernandez has provided no new evidence—nor any evidence at all—to support his assertion of actual innocence. (*See* R. 1, Pet. at 5.) Even considering the totality of the facts and arguments in Hernandez's petition, the only evidence that—according to Hernandez—should have been presented at trial and was left out erroneously is the testimony of his attorney regarding the timing of his arrival at the police station where Hernandez was being questioned.

---

ineffective assistance of counsel claim sufficient to revive the defaulted claims.

11

(*Id.* at III-A-III-D.) Had the trial court admitted this evidence, it would have been up to the jury to decide whether it believed the attorney's or the police officer's account of the timing of the attorney's arrival. We cannot find—especially in view of the trial court's specific finding that the police officer's testimony was more credible than the attorney's testimony—that no reasonable juror would have believed the police officer. Nor can we find that even if no reasonable juror would have believed the police officer that necessarily means that no reasonable juror could have convicted Hernandez. Hernandez also speculates in claim six that the police planted the murder weapon in Kwil's apartment and that they concocted the story attributed to Hernandez. (*Id.* at V-A-V-D.) Speculation is all Hernandez offers on this point; he submits no new evidence to support his theory. Because Hernandez has not established his actual innocence, he cannot pass through the fundamental miscarriage of justice "gateway" to overcome his procedural default of claims three, four, and six. *See Schlup*, 513 U.S. at 316.

## II.    Non-Cognizable Claim: Claim Two

Hernandez's second claim for relief states that he was denied his Sixth Amendment right to a fair trial because the trial court allowed Rodriguez to testify as a gang crimes expert to establish motive.[2] (R. 1, Pet. at II-A.) Hernandez states that this decision "was contrary to, and involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." (*Id.*) A state court decision is "contrary to" federal law only if "'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law' or 'if the state court confronts facts that are materially indistinguishable

---

[2] Hernandez fully pursued this claim during his direct appeal in state court so there is no issue of procedural default in connection with this claim.

12

from a relevant Supreme Court precedent and arrives at a result opposite'" to the Supreme Court's holding. *Anderson v. Cowen*, 227 F.3d 893, 896 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 406). A habeas applicant attempting to demonstrate that a state court judgment involves an unreasonable application of federal law must show that a state court incorrectly applied a federal law and that the state court's application was objectively unreasonable. *Woodford*, 537 U.S. at 27.

Hernandez has not cited a single federal case in support of his argument that the trial court's decision to permit the gang crimes expert testimony was contrary to and involved an unreasonable application of federal law. While Hernandez argues that this testimony was "highly prejudicial and inflammatory," irrelevant, and "beyond the scope of proper expert opinion," he provides no support for his assertion that these alleged mistakes are of constitutional magnitude. As the appellate court noted, the trial court's decision to allow this testimony was based solely on Illinois state evidentiary law. (*See* R. 13, Ex. D, Ill. App. Order at 11-14.) The Illinois Appellate Court considered Hernandez's claim that admission of this testimony was error and rejected it. (*Id.*) Claims that a state court erred in applying its own laws simply are not cognizable in a federal habeas proceeding. *Smith v. Phillips*, 455 U.S. 209, 221 (1982); *Jones v. Thieret*, 846 F.2d 457, 459 (7th Cir. 1988). Accordingly, we must deny Hernandez's claim that the admission of gang crimes expert testimony entitles him to habeas relief.

### III. Claim 5: Excessive Sentence

Hernandez's fifth claim for relief is that his sentence is excessive because the state's

13

evidence against him was weak.[3] (R. 1, Pet. at V-A.) Hernandez cites no federal case law to support his contention that the constitutionality of a sentence turns on the strength of the evidence at trial. Hernandez's sixty-year sentence falls within the guideline range in Illinois for first degree-murder. 730 ILCS 5/5-8-1. The Seventh Circuit has held that "in non-capital felony convictions, a particular offense that falls within legislatively prescribed limits will not be considered disproportionate unless the sentencing judge has abused his discretion." *Henry v. Page*, 223 F.3d 477, 482 (7th Cir. 2000) (quoting *United States v. Vasquez*, 966 F.2d 254, 261 (7th Cir. 1992). Here, there is no basis to conclude that the trial court abused its discretion in imposing the sixty-year sentence. The trial court expressly based its sentencing decision on Hernandez's extensive criminal background.[4] (R. 13, Ex. I, Ill. App. Order at 2.) Because Hernandez's sentence is authorized by Illinois law and there is no evidence that it is based on any abuse of discretion, Hernandez is not entitled to a writ of habeas corpus based on his excessive sentence claim. *See Page*, 223 F.3d at 482 (holding that an eighty year sentence for the unlawful possession of cocaine was not based on an abuse of discretion where sentence was authorized by Illinois law and the defendant's previous convictions made him eligible for an enhanced sentence).

---

[3]While Respondent argues that underdeveloped arguments are waived in habeas proceedings, given Hernandez's *pro se* status we are obliged to give a generous reading to each of his claims. *See Winsett v. Washington*, 130 F.3d 269, 280 (1997). Hernandez states that "[b]ecause 'weak evidence' can support both a claim of a sentence being 'excessive' and the state failing to prove its case beyond a reasonable doubt, Petitioner incorporates each of these claims together." (R. 1, Pet. at V-A.) Accordingly, we have considered whether Hernandez's arguments regarding the nature of the evidence at trial support his excessive sentence claim.

[4]The state appellate court noted that the trial court gave Hernandez a longer sentence than Gecht—who was the actual shooter—because Hernandez, and not Gecht, had a significant criminal background.

14

## IV. Claim 1: Denial of Access to Counsel

The only claim that we must address on the merits is Hernandez's first claim for habeas relief, which states that he was denied his right to counsel during questioning at the police station. (R. 1, Pet. at I-A.) As an initial matter, it is not clear that Hernandez fully and fairly presented this claim during one full round of appeal in the state courts. In his brief on direct appeal, Hernandez argued that he "was denied a fair trial when he was denied his state constitutional right to counsel and to due process of law." (R. 13, Ex. A, Def.'s App. Br. at 35.) Specifically, he argued that the police did not allow Solock to speak with Hernandez when he arrived at the police station until after Hernandez had given a statement, and that these actions violated his "State of Illinois constitutional right to counsel and to due process of law as established in *People v. McCauley*, 163 Ill.2d 414, 645 N.E.2d 923 (1994)[.]" (*Id.* at 37.) There is no express reference to a federal right or federal law anywhere in his appellate brief or in his petition for leave to appeal to the Illinois Supreme Court.

A habeas petitioner can avoid procedural default by presenting the substance of a federal claim—in other words, the operative facts and legal theory on which his claim is based—in one full round of the state appellate process. *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). In determining whether the substance of a federal claim was presented below, we consider whether the petitioner's argument in the state court "(1) rel[ied] on pertinent federal cases employing constitutional analysis; (2) rel[ied] on state cases applying constitutional analysis to a similar factual situation; (3) assert[ed] the claim in terms so particular as to call to mind a specified constitutional right; or (4) allege[d] a pattern of facts that is well within the mainstream of constitutional litigation[.]" *Id.* at 1473-74 (quoting *Pierson v. O'Leary*, 959 F.2d 1385, 1393

15

(7th Cir. 1992)). The Seventh Circuit has noted that "with respect to due process claims, the contours of the possible constitutional claims are, of course, particularly indistinct and the overlap of state and federal jurisprudence particularly striking." *Id.* at 1475. Because Hernandez styled his right to counsel argument as a due process argument that could have alerted the state courts to his federal claim, we will not consider this claim to have been procedurally defaulted.

Turning to the substance of Hernandez's right to counsel claim, his petition again appears to rely on state law because he argues that the police conduct at issue violated the Illinois Constitution. Hernandez states that the United States Supreme Court has rejected the idea that police conduct similar to that which occurred in his case violates the United States Constitution. (R. 1, Pet. at I-A (*citing Moran v. Burbine*, 475 U.S. 412 (1986)). He then points out that the Illinois Constitution offers broader protections of the right to counsel and argues that the state courts' findings went against the manifest weight of the evidence. (*Id.*) As explained above, claims that Hernandez's state constitutional rights were violated simply are not cognizable in federal habeas proceedings. *Phillips*, 455 U.S. at 221; *Thieret*, 846 F.2d at 459.

Even giving an extremely generous reading to Hernandez's petition and inferring a federal claim therein, Hernandez's right to counsel claim fails on the merits. The state courts recognized that whether Hernandez was denied access to his counsel between 10:50 a.m. and 11:20 a.m. on March 2, 1999 turns on the credibility of Hernandez's attorney's account of the incident versus the credibility of the police officer's account of the incident. (*See* R. 13, Ex. D, Ill. App. Order at 16.) The trial court listened to and considered the testimony of both witnesses and found that the officer's testimony was more credible. (*Id.*) The Illinois Appellate Court found that this conclusion was not against the manifest weight of the evidence. (*Id.*) This Court

16

is required to give deference to state court findings of fact when considering a habeas petition. 28 U.S.C. § 2254(e)(1). Credibility determinations are quintessentially within the province of the trial court's function and it is inappropriate for a federal district court to usurp that function at the habeas stage. *See Sprotsy v. Buchler*, 79 F.3d 635, 645 (7th Cir. 1996). Hernandez has provided no new evidence to call the credibility determination into doubt or to demonstrate that he was not given access to his attorney promptly when the attorney reached the police station. Even if he had, it is not clear that such a delay would constitute a violation of Hernandez's federal rights. *See Burbine*, 475 U.S. at 432. For all of these reasons, Hernandez is not entitled to habeas relief with respect to his right to counsel claim.

## CONCLUSION

After carefully considering Hernandez's petition and giving it a liberal interpretation in view of Hernandez's *pro se* status, we find that he has not presented any claims sufficient to justify a writ of habeas corpus in this case. As a result, Hernandez's petition is denied. (R. 1-1.)

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: April 20, 2006